# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **TERRY W. GIVENS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:02CV00214 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **JOEY O'QUINN, ET AL.,** | ) | By: James P. Jones |
| | ) | Chief United States District Judge |
| Defendants. | ) | |
| | ) | |
| | ) | |

*Hilary K. Johnson, Abingdon, Virginia, for Plaintiff; H. Ronnie Montgomery, Jonesville, Virginia, for Defendant Charles Janeway; Nicholas Compton, Compton & Compton, P.C., Lebanon, Virginia, for Defendants Joey O'Quinn and Mike Mullins.*

In this § 1983 case, the plaintiff, a state correctional officer, was assaulted by co-workers during a practical joke gone awry. The jury awarded him nominal compensatory damages as well as punitive damages. On post-verdict motions, I hold, among other things, that (1) the plaintiff sufficiently proved that the assault occurred under color of state law; and (2) the punitive damages awarded were not constitutionally excessive.

Terry W. Givens is a correctional officer at Wallens Ridge State Prison, which is a facility operated by the Virginia Department of Corrections. He complains in this case because he was assaulted by two fellow correctional officers, defendants Mike Mullins and Joey O'Quinn. The evidence at trial showed that during the night shift on December 21, 2000, in the course of a misguided joke, Mullins and O'Quinn restrained Givens, bound him with handcuffs and leg irons, pulled down his pants, taped his genitalia to his leg, and took pictures of him. While the purpose of the joke is obscure, there was no evidence that Mullins and O'Quinn harbored actual ill will towards Givens.[1]

Givens filed this suit against the two perpetrators, as well as Charles Janeway, a corrections captain on duty that night, and other supervisors in the Department of Corrections chain of command, asserting a cause of action under 42 U.S.C.A. § 1983 (West 2003), as well as pendent state causes of action. This court dismissed the plaintiff's federal claim, based on a finding that there was no state action to support a claim under § 1983. The state claims were dismissed without prejudice. The plaintiff was granted leave to file an amended complaint in order to assert a retaliation

---

[1] Mullins testified at trial that Givens had been boastful to the other correctional officers about the size of his penis, but Givens denied it.

claim. After the amended complaint had been filed, it was also dismissed for failure to state a claim. *See Givens v. O'Quinn*, No. 2:02CV00214, 2003 WL 22037700, at *1 (W.D. Va. Aug. 29, 2003).

On appeal by the plaintiff, a majority of a panel of the court of appeals voted to remand the case for further proceedings on the substantive § 1983 claim. *Givens v. O'Quinn*, 121 F. App'x 984, 985 (4th Cir. 2005) (unpublished). The dismissal of the retaliation claim was affirmed. *Id.*

After remand, Givens amended his complaint to reassert the state claims previously dismissed. Upon the defendants' motion, the state claims were dismissed as barred by the statute of limitations. *See Givens v. O'Quinn*, No. 2:02CV00214, 2006 WL 399638, at *1 (W.D. Va. Feb. 20, 2006). Summary judgment was entered in favor of all supervisory defendants except for Captain Janeway. Janeway's motion for summary judgment was denied, leaving Janeway, O'Quinn, and Mullins as the sole remaining defendants.

A jury trial was held on February 28 and March 1, 2006. The jury found in favor of the plaintiff and awarded compensatory damages in the amount of one dollar and punitive damages of $5,000 each against Mullins and O'Quinn and $15,000 against Janeway.

Case 2:02-cv-00214-JPJ-PMS   Document 206   Filed 08/30/06   Page 3 of 20   Pageid#: 1356

The defendants have timely filed renewed motions for judgment as a matter of law. *See* Fed. R. Civ. P. 50(b). The defendant Janeway has alternatively moved for a new trial. *See* Fed. R. Civ. P. 59. The issues have been fully briefed and are ready for decision. I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

## II

The defendants have renewed their motions for judgment as a matter of law, initially made at the close of all of the evidence at trial. A district court may grant a renewed motion for judgment as a matter of law if "there is no legally sufficient evidentiary basis for a reasonable jury to find" for the party that was successful at trial. Fed. R. Civ. P. 50(a)(1), (b). In determining the motion,

> [the] jury verdict should be accorded the utmost respect, but if there is no legally sufficient evidentiary basis for the verdict, a motion for judgment as a matter of law must be granted. In assessing whether this standard has been met, a court should not attempt to substitute its judgment for the jury, weigh the evidence, or pass on the credibility of witnesses. Instead, the evidence must be construed in the light most favorable to the party against whom the motion is made, giving that party the benefit of all inferences.

-4-

*Szedlock v. Tenet*, 139 F. Supp. 2d 725, 729 (E.D. Va. 2001) (internal quotations omitted). Thus, the moving party bears a "hefty burden" in establishing that the evidence is insufficient to uphold the jury's verdict. *Price v. City of Charlotte*, 93 F.3d 1241, 1249 (4th Cir. 1996).

Applying these standards, I find that there was sufficient evidence presented at trial to support the jury's finding of liability under § 1983. The defendants argue that the evidence was insufficient to show that the assault upon Givens was perpetrated under the color of state law, and therefore that his claim under § 1983 is not actionable as a matter of law. Specifically, the defendants contend that because there was no evidence that the incident was a part of a hazing ritual, it was purely private conduct and state action was not established. The defendant Janeway also argues that even if there were an actionable § 1983 claim against Mullins and O'Quinn, Givens failed to establish the facts necessary to find supervisory liability against Janeway. I am not persuaded by the defendants' arguments.

In order to state a claim for relief under § 1983, the plaintiff must prove that the assault was perpetrated "under color of" state law. 42 U.S.C.A. § 1983. It is well established that § 1983 is not implicated by "merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation marks omitted). However, "[w]hile it is clear that personal

-5-

pursuits of police officers do not give rise to section 1983 liability, there is no bright line test for distinguishing personal pursuits from activities taken under color of law." *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994) (internal quotation marks omitted).

When distinguishing private violence from violence attributable to state action, courts have explained that an actor's conduct will be attributed to the state when it "occurs in the course of performing an actual or apparent duty of his office, or . . . is such that the actor could not have behaved in that way but for the authority of his office." *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995); *see West v. Atkins*, 487 U.S. 42, 49 (1988) ("The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." (internal quotation marks omitted)). Thus, conduct will be deemed to be under color of state law when the "actions complained of were committed while the defendants were purporting to act under the authority vested in them by the state, or were otherwise made possible because of the privileges of their employment." *Hughes v. Halifax County Sch. Bd.*, 855 F.2d 183, 186-87 (4th Cir. 1988). "In short, it appears that a person acts 'under color of state law' when he engages in conduct that is related to state authority conferred on the person, even

-6-

though that authority does not in fact permit the conduct." *Murphy v. Chicago Transit Auth.*, 638 F. Supp. 464, 467-68 (N.D. Ill. 1986). The fact that this was a practical joke gone awry and none of the perpetrators had ill will toward the plaintiff is irrelevant to the state action inquiry.

Applying these standards to the case at hand, and viewing the evidence at trial in the light most favorable to the plaintiff, I find that there is a sufficient basis to support a jury finding of state action. While the fact that Mullins, O'Quinn, and Janeway were all on duty and in uniform at the time of the assault may be insufficient to show state action, additional evidence tips the balance in the plaintiff's favor.

At trial, Janeway testified that on the night in question he "was the watch commander, which is the ranking official . . . on duty that night." (Tr. 2-68.) Indeed, Givens, Mullins, and O'Quinn all testified that Janeway was their superior, and it is clear from the record that he was in charge of the prison during the events in question in this case. While Janeway denies that he knew what Mullins and O'Quinn were plotting or what exactly was going on as the incident unfolded, Givens testified that "Captain Janeway knew what was going on. He came into the room twice." (Tr. 1-36.) Indeed, all of the parties testified that Janeway entered the room briefly as the assault began and again at its conclusion. Mullins and O'Quinn both stated that Janeway was present in the watch room and standing close by as they had discussed

-7-

the planned assault on Givens.  Therefore, the jury could reasonably conclude that Janeway was aware of Mullins' and O'Quinn's intentions.

Not only was there sufficient evidence to support a finding that Janeway knew what Mullins and O'Quinn had planned, there was also evidence indicating that Janeway was an active participant in the incident.  The incident began in the watch room, where Mullins and O'Quinn seized Givens and began to escort him down the hallway leading to the equipment room where he was eventually shackled, taped, and photographed.  Both Givens and Mullins testified that Givens initially ran away towards a secured door that only central control could open and hit the buzzer in order to escape.  Indeed, Givens testified that he "pushed the button two or three times" and even "hit on the door with [his] fist to get away."  (Tr. 1-28, -33.) Normally, the control panel operator would then open the secured door, but the door never opened for Givens and thus Mullins and O'Quinn were able to accomplish their attack.  According to Mullins, Captain Janeway told him that the reason the door was not opened was because he, Janeway, called the control panel operator on duty, Tracy Atkins, and ordered her not to open it.  While Janeway denies telling Atkins not to open the door and O'Quinn testified that Givens never actually hit the buzzer, I find that there is sufficient evidence to the contrary based on the testimony of Givens and

Mullins.  Thus, a reasonable jury could believe that Janeway was responsible for the door remaining locked.

It is undisputed that, had the door opened, Givens could have escaped the entire incident.  It is also clear that Janeway was in charge of the prison at the time and had authority over control panel officer Atkins.  Therefore, assuming the jury believed that Janeway ordered Atkins to keep the door locked, the jury's finding of state action was reasonable.  As explained above, if "the conduct is such that the actor could not have behaved in that way but for the authority of his office," then the under-color-of-state-law requirement is met.  *Martinez*, 54 F.3d at 986.  By abusing the authority conferred upon him by virtue of his official position, Janeway allowed Mullins and O'Quinn to carry out their scheme.

Givens' original theory of state action was that the assault was part of a hazing ritual condoned by the prison authorities.  *See Givens,* 121 F. App'x at 996 (Gregory, J., concurring in part and dissenting in part).  I agree with the defendants that there was absolutely no evidence that the incident grew out of any "ritual of initiation or in connection with a condition of continued employment at [the prison]."  *Id.*  But this is just one way in which the plaintiff could establish a "'sufficiently close nexus'" between the conduct and the state.  *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) ("Section 1983 . . . includes within its scope apparently private actions

-9-

which have a 'sufficiently close nexus' with the State to be 'fairly treated as that of the State itself.'") (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351(1974)). While the plaintiff's theory of a hazing ritual ultimately failed at trial, he successfully established the requisite nexus by showing that the assault was made possible by Janeway's abuse of his authority.[2]

The defendant Janeway argues that even if state action was present and the claims against Mullins and O'Quinn are thus actionable under § 1983, Givens failed to establish the facts necessary to find supervisory liability against Janeway. However, because Janeway did not argue in his Rule 50 motion at the close of the evidence that proof of supervisory liability was lacking, he is precluded from relying on that ground in his renewed motion.

A renewed motion for judgment as a matter of law under Rule 50 is simply a renewal of an earlier motion made at the close of the evidence, and thus it can only

---

[2] It is argued that in the prior appeal the court of appeals considered and rejected this theory of color-of-state-law, but that is incorrect. Each of the three appellate judges wrote separately. In his opinion supporting remand of the case, Judge Gregory pointed out that it was alleged that Mullins and O'Quinn had "used the prison's locking mechanism to accomplish the hazing ritual." 121 F. App'x at 996. In his opinion, Judge Wilkins, opposing remand, noted that the use of the prison's locking mechanism was insufficient to show state action "because it is in no way linked to the authority conferred on O'Quinn and Mullins as law enforcement officers." *Id.* at 991. In fact, the evidence accepted by the jury at trial showed that it was Captain Janeway, the ranking officer at the prison, and not Mullins or O'Quinn, who ordered the control panel operator to secure the door. Janeway was able to do so only because he had been granted that authority by the state.

-10-

be granted on grounds specifically advanced in the pre-verdict motion. *See Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir. 2001) ("'The posttrial motion is limited to those grounds that were specifically raised in the prior motion for [judgment as a matter of law]'; the movant is not permitted to add new grounds after trial." (internal quotation marks omitted)). "[T]he purpose of requiring the moving party to articulate the ground on which [judgment as a matter of law] is sought is to give the other party an opportunity to cure the defects in proof that might otherwise preclude him from taking the case to the jury." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 286 (2d Cir. 1998) (internal quotation marks omitted). Accordingly, the motion for judgment as a matter of law made at the close of the evidence must, at a minimum, "identify the specific element that the defendant contends is insufficiently supported." *Id*. All of the defendants timely moved for judgment as a matter of law, both at the end of the plaintiff's case and at the close of all the evidence. However, the only grounds stated in support of these motions was that Givens had failed to establish state action. Because Janeway did not advance failure of proof on the supervisory claim as a ground supporting his pre-verdict motion for judgment as a matter of law, he is foreclosed from pursuing that argument now.

Moreover, even if Janeway had included this ground in his motion at the close of the evidence, it is without merit. It is clearly established that "supervisory officials

-11-

may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). In order to make out a claim of supervisory liability, a plaintiff must show that he faced a pervasive and unreasonable risk of harm and that the supervisor's inaction amounted to deliberate indifference or tacit authorization of the misconduct. *Id.* at 373. Givens met this burden. First, the evidence at trial was that Mullins and O'Quinn discussed the planned assault in Janeway's presence. Therefore, there was sufficient evidence to infer that Janeway knew of the impending risk of harm to Givens. Secondly, there was also testimony that Janeway ordered the control panel operator to keep the door locked. This testimony, if believed, would establish that not only did Janeway fail to intervene, he actively participated in the misconduct. This far exceeds deliberate indifference or tacit authorization. Accordingly, I find that there was sufficient evidence at trial to support the jury's finding of supervisory liability against defendant Janeway.

Finally, Janeway argues that he cannot be held liable under § 1983 because he is entitled to qualified immunity. Just as he did not raise the argument that Givens failed to make out the elements of a supervisory liability claim, Janeway also did not advance qualified immunity as a ground to support his pre-verdict motion for

-12-

judgment as a matter of law. Therefore, he is foreclosed from adding this new ground after trial.

Even if Janeway were not foreclosed from advancing this qualified immunity argument, it is without merit. "Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) (internal quotation marks omitted). Thus, a state actor is not entitled to qualified immunity if: "(1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a 'clearly established' right 'of which a reasonable person would have known.'" *Id.* Janeway's argument that he is entitled to qualified immunity is based on his assertion that the constitutional duty of onlooker officers to intervene is "murky." *Martinez*, 54 F.3d at 989. However, even if there is uncertainty surrounding the question of whether the failure of an onlooker officer to intervene constitutes the violation of a constitutional right, as Janeway contends, there was evidence presented at trial that Janeway used his authority as captain to order that the door remain locked and thereby actively facilitated the attack. A reasonable officer would have known that this was a

-13-

violation of Given's rights, and thus Janeway's argument that he is entitled to qualified immunity must also fail.

## III

Because I reject the defendants' argument that the plaintiff's § 1983 fails as a matter of law, I must now consider Janeway's motion for a new trial. He argues that a new trial is appropriate for two reasons: (1) the jury instructions and verdict form contained critical errors and (2) the jury's punitive damages award is excessive.[3]

The grant or denial of a motion for a new trial is within the sound discretion of the district court. *See Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998). Pursuant to Federal Rule of Civil Procedure 59(a), "'it is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice.'" *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996) (quoting *Aetna Cas.*

---

[3] Mullins and O'Quinn did not file a motion for a new trial, but argued in their joint brief in support of their Rule 50 motion that the punitive damage verdicts against them violated due process. Accordingly, I will consider the punitive damage issue as it relates to all defendants.

& *Sur. Co. v. Yeatts*, 122 F.2d 350, 352-53 (4th Cir. 1941)). With these principles in mind, I will now address the arguments for a new trial.

Janeway argues that this court's instructions and verdict form were flawed for several reasons. He contends that the state action instruction was erroneous in that it lacked an explicit reference to the nexus that must exist between a state actor's performance of his official duties and the complained of act in order to find state action. Janeway also argues that the supervisory liability instruction was deficient because it did not explicitly mention the causal-link requirement, improperly set forth the deliberate indifference standard, and did not state that there could be no recovery absent proof of injury. Further, Janeway takes issue with the manner in which the verdict form solicited the jury's findings on the supervisory claim. I need not consider the merits of these objections because the defendants failed to object to both the instructions and the verdict form before submission to the jury.

Rule 51 of the Federal Rules of Civil Procedure provides that a party must make its objections to the jury charge before the court instructs the jury. Fed. R. Civ. P. 51(c)(2). Likewise, under Rule 49, a party must raise objections to the special verdict form before submission to the jury. Fed. R. Civ. P. 49(a). Courts have consistently held that these objections are waived if not timely made. *See, e.g., Kloepfer v. Honda Motor Co.*, 898 F.2d 1452, 1456 (10th Cir. 1990). Accordingly,

-15-

a motion for a new trial cannot be based on alleged errors in the instructions or verdict form when no corresponding objections were raised at trial. *See Disharoon v. Wintergreen Dev., Inc.*, No. 90-0014-C, 1991 U.S. Dist. LEXIS 15703, at *6 (W.D. Va. May 20, 1991). "Moreover, on a Rule 59 motion, the court can set aside the verdict and grant a new trial only if the erroneous instruction is prejudicial and would result in a miscarriage of justice." *Pathways Psychosocial Support Ctr., Inc. v. Town of Leonardtown*, 223 F. Supp. 2d 699, 707 (D. Md. 2002) (internal quotation marks omitted).[4] Because the defendants failed to make a timely objection, and because it cannot be said that the jury instructions in question or the verdict form were so erroneous that a miscarriage of justice would result, these alleged errors cannot constitute grounds for a new trial.

Lastly, I will address the contention that the jury's punitive damage awards were excessive.[5] The defendants argue that the disparity between the one-dollar

---

[4] The Fourth Circuit employs a plain error standard when considering appeals from district court denials of motions for a new trial based on erroneous jury instructions. *See Hafner v. Brown*, 983 F.2d 570, 578 (4th Cir. 1992) ("Failure to object at the proper time will be overlooked on appeal only if exceptional circumstances exist such as when the error is so obvious or so serious that the public reputation and integrity of the judicial proceeding is impaired.").

[5] Janeway also argues that the jury verdict was inconsistent and that the punitive damages award cannot stand for this reason. At trial, the jury initially returned the special verdict form with the amount of compensatory damages set at zero dollars and the punitive damages set at $5,000 each against Mullins and O'Quinn and $15,000 against Janeway. The defendants argue that compensatory damages are a prerequisite to punitive damages. Indeed,

nominal damages award, on one hand, and the punitive awards, on the other, renders the awards unconstitutional. After careful consideration, I find that the punitive damage awards do not violate due process.

Punitive damages are available under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The amount of punitive damages to be awarded, if any, lies within the province of the trier of fact. *Gordon v. Norman*, 788 F.2d 1194, 1199 (6th Cir. 1986). However, due process prohibits the imposition of "a grossly excessive

---

although § 1983 is silent on the question, "[i]n the absence of a specific statutory directive on this issue, federal courts have chosen to apply the majority rule that punitive damages are not recoverable when compensatory damages have not been awarded." *People Helpers Found. v. City of Richmond*, 12 F.3d 1321, 1327 (4th Cir. 1993). *But see Erwin v. County of Manitowoc*, 872 F.2d 1292, 1299 (7th Cir. 1989) (holding that "when a jury finds a constitutional violation under a § 1983 claim, it may award punitive damages even when it does not award compensatory damages").

Nonetheless, assuming that the jury's original verdict was inconsistent, there was no error. The jury was instructed that if it found (as it did) that there was a violation of the plaintiff's constitutional rights, but that he suffered no actual damages, he must be awarded nominal damages. (Instruction No. 16.) After the initial verdict, the jury was sent back to redeliberate. The jury returned after having changed the compensatory damage amount to one dollar, thereby remedying any inconsistency. It is in a trial court's discretion, when confronted with an inconsistent verdict, to determine whether a new trial should be granted or the jury should simply be given a chance to redeliberate and resolve the inconsistency. *See Hinkle v. Waddell*, No. 90-6481, 1991 U.S. App. LEXIS 23535, at *7 (6th Cir. Sept. 27, 1991) (unpublished). Moreover, it was within the court's power to award the plaintiff nominal damages in order to cure the jury's inconsistent verdict. *See Robinson v. Cattaraugus County*, 147 F.3d 153, 162 (2d Cir. 1998).

-17-

punishment on a tortfeasor." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996) (internal quotation marks omitted).

In deciding whether an award of punitive damages is grossly excessive, a court should consider "the degree of reprehensibility of the [relevant conduct]; the disparity between the harm or potential harm suffered by [the plaintiff] and his punitive damages award; and the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *Gore*, 517 U.S. at 575.

In assessing reprehensibility, I may consider whether "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). Here, although the conduct was an isolated event and was motivated by misguided camaraderie rather than malice, it did involve a degrading physical assault. Another *Gore* factor—the relationship between actual damages and punitive damages—would weigh in the defendants' favor if it were fully applicable because the jury awarded the plaintiff only nominal damages. The ratio between punitive and compensatory damages here is as much as 15,000 to one. However, this factor is not a determining

-18-

indicator of excessiveness in cases where only nominal compensatory damages are awarded. *See Fabri v. United Techs. Int'l, Inc.*, 387 F.3d 109, 126 (2d Cir. 2004) ("Although the State Farm Court noted that single-digit multipliers are more likely to comport with due process than awards with ratios in the range of 500 to 1, it also recognized that this proposition may not apply where the plaintiff receives an insignificant or nominal compensatory award." (internal quotation marks and alterations omitted)). In the case of a nominal compensatory award, high ratios between the compensatory and punitive damages are tolerated. Other than requiring the disparity between the punitive and compensatory damages awards to be reasonable, the Supreme Court has declined to impose a "bright-line ratio which a punitive damages award cannot exceed." *State Farm*, 538 U.S. at 425.

Finally, I find that the third *Gore* factor—the difference between this remedy and civil penalties authorized or imposed in comparable cases—also does not militate in favor of a reduction of the verdicts. This factor allows the court to accord deference to "'legislative judgments concerning appropriate sanctions for the conduct at issue.'" *Gore*, 517 U.S. at 583 (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 301 (1989) (O'Connor, J., concurring in part and dissenting in part)). There are no relevant legislative enactments that would have led

-19-

the defendants here to believe that their conduct would not have subjected them to the punitive damages awarded.

Based on a consideration of the relevant factors, I find that the punitive damage awards are not so excessive as to be in violation of the constitutional guarantee of due process. While I might not have voted to award such amounts had I been on the jury, my personal opinion as to the appropriateness of the verdicts is irrelevant.[6]


IV

For the foregoing reasons, it is **ORDERED** that the motions for judgment as a matter of law (#184, #186) and the motion for a new trial (#186) are DENIED.

ENTER: August 30, 2006

/s/ JAMES P. JONES
Chief United States District Judge

---

[6] There is no claim that the punitive damages awarded are oppressive in light of the defendants' assets or ability to pay, even if that were a factor to consider. *See Patterson v. Balsamico*, 440 F.3d 104, 122 (2d Cir. 2006).